## Houston's Estate.

*Inheritance transfer tax—Collateral inheritance—Rate of tax on fund held in trust created before passage of Act of May 4, 1921.*

Property held in trust under an irrevocable deed executed before the passage of the Act of May 4, 1921, P. L. 341 (amending section 2 of the Inheritance Transfer Tax Act of June 20, 1919, P. L. 521, by raising the collateral inheritance tax from 5 per cent. to 10 per cent.), for the settlor for life with remainders over to collaterals, is subject only to a collateral inheritance tax of 5 per cent. on the settlor's death after the passage of the amendment.

Exceptions to decree *sur* appeal from assessment of transfer inheritance tax. O. C. Phila. Co., Oct. T., 1921, No. 546.

The opinion of LAMORELLE, P. J., hearing judge, was as follows:

"This matter was heard by me, Lamorelle, P. J., on petition, answer, replication and stipulation, Jan. 5th and Feb. 8, 1922, Maurice Bower Saul and R. M. Remick, Esqs., appearing for the appellant, and William M. Boenning, Esq., for the Commonwealth.

"These are the material facts:

"By deed dated Dec. 3, 1918, J. Frederick Houston and Marian F. Houston, his wife, granted, transferred and assigned unto the Pennsylvania Company for Insurances on Lives and Granting Annuities certain securities therein described and cash, in trust, to pay the net income therefrom to said Marian F. Houston for life; upon her death to pay same to said J. Frederick Houston for life; and upon the death of the survivor to assign and convey the principal to William McL. Freeman in fee.

"The property so conveyed was that of the wife, who was, at the time of the execution of the deed, a resident of and domiciled in Philadelphia.

"The deed contained no clause of revocation; on the contrary, it was, in terms, irrevocable.

"Marian F. Houston died June 27, 1921, her husband, said J. Frederick Houston, having predeceased her; whereupon William McL. Freeman became forthwith entitled under the deed of trust to the *corpus* of the trust fund.

"At the date of the death of Marian F. Houston the estate amounted to $31,265.26; it was valued at this sum, and on Oct. 31, 1921, the Register of Wills assessed transfer inheritance tax thereon at the rate of 10 per cent., amounting to $3126.53, under the Act of May 4, 1921, P. L. 341.

"William McL. Freeman is not a lineal descendant; at the time of the execution of the deed, the Act of May 6, 1887, P. L. 79, taxing bequests passing to collaterals at 5 per cent., was in force.

"At the time William McL. Freeman became entitled to actual possession and enjoyment the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended by the Act of May 4, 1921, P. L. 341, was in force.

"The one question for determination, therefore, is whether the *corpus* of the estate is to pay a tax of 5 per cent. under the earlier act or 10 per cent.

"I am of opinion that the later Acts, those of 1919 and 1921, do not apply.

"That part of section 2 of the Act of June 20, 1919, which is to be considered, provides:

" 'That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . .

" '(c) . . . by deed, grant, bargain, sale or gift, . . . intended to take effect in possession or enjoyment at or after' the death of the grantor, vendor or donor.

2 D. & C.

"This language negatives retroactivity. A tax *shall be* and *is hereby imposed* upon transfer of any property 'intended to take effect in possession,' etc., after the death of the grantor. These words can have but one meaning, and that is that they refer to a conveyance made by the grantor, settlor or donor, at or after the date on which the act became effective.

"As was said in Jewell's Estate, 20 Dist R. 1055, at page 1059: 'A retroactive statute is not necessarily unconstitutional; it is always, however, to be interpreted to operate prospectively and not retrospectively, unless its language is so clear as to preclude all question as to legislative intent.'

"In the present case that conveyance was made some two and one-half years before the passage of the act under which the Register has assessed the tax. The date of the deed is the time when the present appellant and remainderman became vested with the title. There was no intention on the part of the settlors to defeat the law as it then stood, nor was there any right retained by which the settlor could subsequently control the *corpus;* and decisions predicated on such intention or reserved rights, such as Reish *v.* Com., 106 Pa. 521; Seibert's Appeal, 110 Pa. 329; Du Bois's Estate, 121 Pa. 368, are not in point. In the instant case the title, possession and ultimate enjoyment of the *corpus* all passed from the settlor in December, 1918. While the settlor and her husband were to receive the income for life, they absolutely parted with all control over principal, divesting themselves in so many words of any such power. The transfer which is made taxable by the Act of 1921 was an accomplished fact years before. The legal title to the securities then became vested in the trustee, to be divested when the trust terminated by the death of the survivor of the settlor and her husband. Their death was the event upon which the present appellant was to enter into possession and enjoyment, but it did no more than fix the time when the Commonwealth could demand payment of the tax and the time when the estate was to be valued.

"The conclusion of a majority of this court in Dick's Estate, 30 Dist. R. 839, is in harmony with my opinion in the matter now under consideration. We there held that a trust estate, to the enjoyment of which a daughter of the settlor became entitled on the death of the latter, Sept. 20, 1918, was not subject to payment of a direct transfer inheritance tax of 2 per cent. imposed by the Act of July 11, 1917, P. L. 832, for the reason that no such law was existent at the time title to *corpus* passed from settlor by deed made in the year 1913. So, too, in Gilmer's Estate, 26 Dist. R. 949, we held that the Act of July 11, 1917, did not apply to estates which passed from testatrix before the date thereof, notwithstanding that the *cestui que trust* for life died about one month after the act became effective.

"The record concedes that a tax of 5 per cent. should be assessed, and, therefore, in sustaining the exceptions, I may not be required to consider a matter not necessarily involved. Yet, as the citation which went out against the Commonwealth required it to show cause why the tax should not be reduced from 10 per cent. to 5 per cent., I have no hesitation in holding that the Act of May 6, 1887, is still in force and is effective in estates which have passed from one seized or possessed thereof prior to 1919. Here, as before stated, the title to the *corpus* vested in both the trustee and the remainderman as of the date of the deed, to wit, Dec. 3, 1918.

"It is true that section 47 of the Act of June 20, 1919, repeals the Act of May 6, 1887, but with the following proviso:

"'. . . but nothing in this repealer shall affect or impair the lien of any taxes heretofore assessed, or any tax due, owing, or payable, or any remedies

for the collection of the same, or to surrender any remedies, powers, rights or privileges acquired by the Commonwealth under said act, approved May 6, 1887, entitled 'An act to provide for the better collection of collateral inheritance taxes,' its amendments and supplements, and the said act approved July 11, 1917, entitled 'An act for the imposition and collection of certain inheritance taxes,' or to relieve any person or corporation from any tax or penalty imposed by said acts.'

"The Commonwealth has not, therefore, surrendered any remedies, *powers*, rights or privileges acquired under this prior act. Its right to collect could not be exercised until the death of the survivor of the life-tenants.

"I have heard oral argument and have also considered the six different briefs submitted—three on each side. I have refrained from citing numbers of decisions, for I believe those which are pertinent uphold the law as I have applied it. I cannot, however, refrain from saying that the dominant thought in Lloyd's Estate, 15 Dist. R. 932, followed by Seabrook's Estate, 25 Dist. R. 411, is that where a section of an act is repealed without a clause saving existing rights, a tax cannot be collected.

"And now, to wit, Sept. 8, 1922, all exceptions are sustained and the record is remitted to the Register for proper action in accordance with this opinion."

*W. M. Boenning*, for Commonwealth; *Saul, Ewing, Remick & Saul*, contra.

GEST, J., Oct. 27, 1922.—The claim of the Commonwealth to tax this trust estate at 10 per cent., under the Acts of June 20, 1919, P. L. 521, and May 4, 1921, P. L. 341, is not supported by the authorities, nor is it agreeable to just principles of taxation. The grantor in the deed parted with her title before the passage of either of these acts of assembly. She reserved no right of revocation, nor did she retain the right of control, for her power exercisable jointly with the trustee to change investments is a very different thing; the terms of the trust were unchangeable. The deed was not executed with any intent to defraud the Commonwealth or to evade the law, nor was it made in such contemplation of death as to bring it within any applicable decision. As soon as the deed was executed, Freeman had a vested right in the property, only defeasible in case of his death (which has not occurred), when it would pass under his will, and his prospective right would have passed by his assignment to others: Serrill's Estate, 15 W. N. C. 470; s. c., Wickersham's Appeal, 18 W. N. C. 36.

A further argument is based on the provision in the deed that the settlor had the right to add to the *corpus* of the trust, but this has nothing to do with the question, however it might be, if she had reserved the right to withdraw some of the assets. Had she added to the *corpus*, her transfer of fresh assets would be simply equivalent to making a new assignment of them in trust. This clause in the deed was obviously inserted to save the trouble of drawing another deed, but did not in any way affect the rights which had already passed.

Nor can it be successfully argued that the tax is not on the transfer of title to the property, but on the transfer of enjoyment, for, as it seems to us, the act means by this the right of enjoyment, and this was vested under the deed. If the tax is imposed when enjoyment is perfected by actual possession, and this theory is carried to its logical conclusion, it would seem that if, during the administration of an estate, delays occur, as they necessarily must, and if, before actual distribution is made, the rate of taxation is changed, a legacy would be taxed at the changed rate, which would appear to be a *reductio ad absurdum*.

2 D. & C.

We need not amplify the reasoning of the presiding judge, but may add that the recent case of Oliver's Estate, 273 Pa. 400, supports our views.

The appeal is sustained and the exceptions are dismissed.